UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

ERNEST JOSEPH,

       Petitioner,

v.                               Case No. 3:25-cv-1579-MMH-PDB

SCOTTY RHODEN, et al.,

       Respondents.

_____

## ORDER

### I. Status

Petitioner Ernest Joseph, an immigration detainee at Baker Correctional Institute, initiated this action through counsel by filing a Petition for Writ of Habeas Corpus and Complaint for Declaratory and Injunctive Relief (Doc. 1; Petition) pursuant to 28 U.S.C. § 2241 on December 19, 2025. Respondents filed a Response and Motion to Dismiss Petition and Complaint for Declaratory and Injunctive Relief (Doc. 7; Response), and Joseph filed a counseled Reply (Doc. 9; Reply). This case is ripe for review.

### II. Background

Joseph, a citizen of Haiti, was born in Cap-Haïtien, Haiti on December 20, 1982. Petition at 8. He entered the United States as a minor in 1990, "after being brought by a 'guardian' during a period of political violence in Haiti." Id.

at 9. Joseph's guardian subsequently abandoned him, so he resided with an adopted family in Florida. Id.

In April 2002, Joseph was arrested and later pled guilty to attempted armed robbery and aggravated assault. Id. He was sentenced to ten years in prison followed by probation. Id. On July 17, 2007, an Immigration Law Judge ordered Joseph removed to Haiti. Id. at 10. On April 12, 2011, after Joseph completed his criminal sentence, United States Immigration and Customs Enforcement (ICE) detained him. Id.

During Joseph's detention, ICE attempted to obtain travel documents from Haiti. Id. "Despite these efforts, DHS [(Department of Homeland Security)] conceded it lacked a Haitian birth certificate or other definite proof of Haitian citizenship required by Haiti." Id. In November 2011, ICE transferred Joseph to Louisiana in preparation for removal on a charter flight to Haiti; however, ICE removed Joseph from the flight because Haitian authorities did not recognize Joseph as a citizen and refused to accept him. Id. at 11. ICE subsequently returned Joseph to Florida. Id.

On October 13, 2011, after six months of detention, Joseph filed a petition for writ of habeas corpus in the United States District Court for the Northern District of Florida. Id. On March 21, 2012, the assigned district judge

granted habeas relief and ordered that Joseph be released from ICE custody. Id. at 12.

Since his release, Joseph has become a business owner, entered a committed relationship with his partner, and has three minor children who are United States citizens. Id. at 13, 16. On December 15, 2025, ICE re-detained Joseph "during what was supposed to be a routine reporting and check-in appointment in accordance with his release on [an] Order of Supervision [(OSUP)]." Id. at 13. Based on these factual allegations, Joseph raises multiple claims. Id. at 32–43. As relief, he requests, inter alia, immediate release. Id. at 43–44.

## III. Analysis

In Count One, Joseph argues that he is entitled to release under Zadvydas v. Davis, 533 U.S. 678 (2001), because his post-removal order detention exceeds six months and there is no significant likelihood of removal in the reasonably foreseeable future. Petition at 33–35. Following an order of removal, immigration detention is governed by 8 U.S.C. § 1231. See Johnson v. Guzman Chavez, 594 U.S. 523, 543–44 (2021) ("And § 1231 explains what to do if the alien is ordered removed."); see also Deshati v. Noem, No. 25-cv-15940-

ESK, 2025 WL 3204227, at *2 (D.N.J. Nov. 17, 2025)[1] ("The statute governing post-final order of removal immigration detention is 8 U.S.C. § 1231."). Pursuant to 8 U.S.C. § 1231(a)(1)(A), "when an alien is ordered removed, the Attorney General shall remove the alien from the United States within a period of 90 days." Detention during the removal period is mandatory. 8 U.S.C. § 1231(a)(2).

Nevertheless, in Zadvydas, 533 U.S. at 690, the Supreme Court held that indefinite detention of aliens raises serious constitutional concerns. Once an order of removal is final, ICE should make every effort to remove the alien within a reasonable time. Id. at 701. The government may detain an alien beyond the statutory removal period if he is, among other things, a criminal alien or the Attorney General has determined the alien is a risk to the community or unlikely to comply with the order of removal. 8 U.S.C. § 1231(a)(6). The Supreme Court in Zadvydas held that six months is a presumptively reasonable period to detain a removable alien awaiting deportation. Id. "Although not expressly stated, the Supreme Court appears to

---

[1] The Court notes that although decisions of other district courts are not binding, they may be cited as persuasive authority. See Stone v. First Union Corp., 371 F.3d 1305, 1310 (11th Cir. 2004) (noting that, "[a]lthough a district court would not be bound to follow any other district court's determination, the decision would have significant persuasive effects.").

view the six-month period to include the 90-day removal period plus 90 days thereafter." Akinwale v. Ashcroft, 287 F.3d 1050, 1052 (11th Cir. 2002).

After that six-month period has passed and the alien "'provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future,'" the burden then shifts to the Government to provide evidence sufficient to rebut that showing. Id. at 1052 (quoting Zadvydas, 533 U.S. at 701). Thus, "in order to state a claim under Zadvydas the alien not only must show post-removal order detention in excess of six months but also must provide evidence of a good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." Id. If an alien makes these showings, then the burden shifts to the government to rebut the presumption with sufficient evidence establishing that there is a significant likelihood of removal in the reasonably foreseeable future. Zadvydas, 533 U.S. at 701.

Here, the Court first considers whether the presumptively reasonable six-month period has expired. Courts have used various methods to calculate the six-month period. Some courts have considered in the aggregate all periods of detention following an order of removal, regardless of whether the periods of detention were consecutive. See Jaranow v. Bondi, No. 2:25-cv-02396-TL, 2026 WL 35864, at *3 (W.D. Wash. Jan. 6, 2026) (collecting cases from the

5

Ninth Circuit that "have found that the six-month period of detention need not be consecutive to reach the limit established in <u>Zadvydas</u>"); <u>Patel v. Bondi</u>, No. CV 25-16218 (KMW), 2025 WL 3294353, at *2 (D.N.J. Nov. 26, 2025) (finding that the court must "consider the entire period of [the p]etitioner's detention"— not just the current length of detention). Other courts have not—instead they have determined that each period of detention restarts the removal-period clock. <u>See</u> <u>Barrios v. Ripa</u>, No. 1:25-cv-22644, 2025 WL 2280485, at *8 (S.D. Fla. Aug. 8, 2025) (rejecting a petitioner's argument "that his detention should be counted in the aggregate based upon his prior detentions," because doing so would raise constitutional concerns to "any subsequent period of detention, even one day," "[a]nd adjudicating the constitutionality of every re-detention would obstruct an area that is in the discretion of the Attorney General— effectuating removals"); <u>Liu v. Carter</u>, No. 25-3036-JWL, 2025 WL 1207089, at *2 (D. Kan. Apr. 25, 2025) ("[T]he removal-period clock restarts when an alien subject to a removal order is again detained by ICE."). Still other courts appear to have determined that the presumptively reasonable six-month period includes the 90-day removal period and the 90-days immediately thereafter and expires once that time has run. <u>See</u> <u>Beltran v. Ripa</u>, No. 2:25-cv-01174-SPC-NPM, 2026 WL 21252, at *2 (M.D. Fla. Jan. 5, 2026).

Respondents contend that the authority to detain Joseph remains within the presumptively reasonable six-month period because, considering only Joseph's most recent detention, as of the date of the filing of the Response, ICE had detained Joseph for approximately 23 days. Response at 6. The Court is not persuaded that the presumptively reasonable period of detention restarts with each new detention. Here, ICE detained Joseph for 345 days—nearly one year—between April 12, 2011, and March 21, 2012. Petition at 10, 12. As such, Joseph has already been detained beyond the presumptively reasonable six-month period.

Because the six-month period for presumptively reasonable detention has expired, Zadvydas's burden-shifting framework applies. Joseph has carried his initial burden by showing a good reason to believe there is no significant likelihood of removal in the reasonably foreseeable future. Indeed, since April 12, 2011, when ICE first detained Joseph following his order of removal, it has failed to remove him to Haiti or any other country. Haiti has refused to recognize Joseph as a citizen, and there is no evidence that any other country has been willing to accept him. Thus, the burden shifts to Respondents.

The Court finds that Respondents have not submitted evidence sufficient to rebut Joseph's showing that there is no significant likelihood of removal in the reasonably foreseeable future. Respondents submit the declaration of

Milciades Amparo, Jr., an ICE deportation officer. <u>See generally</u> Doc. 7-3.

Amparo states that ICE intends to remove Joseph to Mexico pursuant to 8

U.S.C. § 1231(b)(2)(E). <u>Id.</u> at 3. Amparo describes the following process for

Joseph's removal:

> The petitioner will be transferred to one of the corresponding ICE field offices along the southwest border that processes third-country removals to Mexico.
>
> The petitioner will receive a Notice of Removal to Mexico 24 hours prior to his transfer to the relevant field office.
>
> The receiving ERO [(Enforcement and Removal Operations)] field office will then notify Mexico's Instituto Nacional de Migracion (INM) of the petitioner's upcoming removal to Mexico.
>
> Following INM's final acceptance, he will immediately be transported to the Customs and Border Patrol corresponding port of entry for removal to Mexico.

<u>Id.</u> at 3–4 (numeration omitted).

The Court does not find this evidence persuasive. Amparo describes only

a general procedure for preparing to deport Joseph to Mexico at an unspecified

time. There is no evidence that ICE has attempted to obtain a Mexican travel

document for Joseph, that Mexico intends to accept Joseph, or that ICE has

communicated with Mexico regarding Joseph at all. Indeed, the Court

considers this plan with great skepticism considering Haiti has refused to issue

a birth certificate to Joseph since at least July 2017, Doc. 9-1 at 18, yet ICE appears to have made no attempts to initiate third-country removal proceedings for Joseph until now. Based on the evidence presented, the Court finds Respondents have failed to show that there is a significant likelihood Joseph will be removed in the reasonably foreseeable future. Therefore, Joseph is entitled to release from detention under Zadvydas.

Because the Court will grant the Petition on the basis of Joseph's Zadvydas claim, Count One, it does not, and need not, address Joseph's remaining claims. See Reply at 2 (urging the Court to resolve this case on Joseph's Zadvydas claim alone); Banks v. Dretke, 540 U.S. 668, 689 n.10 (2004) (declining to address an additional claim in a habeas petition after granting relief on another claim because "any relief [petitioner] could obtain on that claim would be cumulative"); see, e.g., Pena-Gil v. Lyons, No. 25-CV-03268-PAB-NRN, 2025 WL 3268333, at *4 (D. Colo. Nov. 24, 2025) ("Because the Court will grant petitioner's petition on the basis of his Zadvydas claims, . . . it need not reach petitioner's remaining claims that contest petitioner's detention.").[2]

---

[2] Insofar as Joseph requests attorney's fees, he may make such a request in a separate motion, if appropriate. Any such motion must be supported by a memorandum of law.

Accordingly, it is **ORDERED**:

1.     Joseph's Petition for Writ of Habeas Corpus (Doc. 1) is **GRANTED** as to Count One. Respondents shall release Joseph **within 24 hours** of this Order, and they shall facilitate his transportation from the detention facility by notifying his counsel when and where he can be collected.

2.     The **Clerk** is directed to terminate any motions; enter judgment granting the Petition as to Count One; and close the file.

**DONE AND ORDERED** at Jacksonville, Florida, this 2nd day of February, 2026.

**MARCIA MORALES HOWARD**
United States District Judge

Jax-9 1/22
c:     Counsel of record

10